SLIP OPINION

Cite as 2014 Ark. App. 469

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-405

| | |
|---|---|
| JENNIE WARREN<br><br>APPELLANT<br><br>V.<br><br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered September 17, 2014<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. JV 2013-43-3]<br><br>HONORABLE STACEY A. ZIMMERMAN, JUDGE<br><br>AFFIRMED |

## ROBIN F. WYNNE, Judge

Jennie Warren appeals from the order of the circuit court terminating her parental rights to her children, B.W.A., D.S., and I.W.[1] She argues on appeal that there was not sufficient evidence presented at the termination-of-parental-rights hearing to support the findings made by the circuit court. We affirm.

The Arkansas Department of Human Services (DHS or the Department) exercised a seventy-two-hour emergency hold on the children after it received a hotline call indicating that three-month-old B.W.A. had sustained a subdural hematoma and bite marks alleged to have been caused by appellant. A worker who visited the home saw that the children were in dirty diapers and had dirty feet. The family had an open protective-services case at the time

---

[1]The parental rights of the children's fathers were also terminated; however, none of them are a party to this appeal.

SLIP OPINION

and had a previous protective-services case that was open from December 2010 until April 2011.

In March 2013, the circuit court adjudicated the children dependent-neglected based on abuse and neglect due to inadequate supervision and "moving every few weeks to couple of months." In the adjudication order, the circuit court noted that when B.W.A. sustained a subdural hematoma, appellant and the children were living with people appellant had only known for a few weeks and that appellant entrusted them to supervise the children without knowing their last names. The goal of the case was set as reunification with appellant. In a review order entered on April 25, 2013, the circuit court found that B.W.A. sustained a non-accidental brain injury as a result of being "horrifically abused" while in the custody of appellant. Following the permanency-planning hearing, the circuit court found that appellant was not complying with the case plan, was not making progress toward the goals in the case plan, and was not diligently working toward reunification. The circuit court also found that appellant had not maintained stable housing, had not maintained adequate income for herself and the children, and had not demonstrated that she could properly parent the children and keep them safe. According to the testimony at the permanency-planning hearing, appellant continued to have contact with Marquis Agee, B.W.A.'s father, despite indicating that he was previously violent toward her while she was pregnant with B.W.A. She was also pregnant with his child at the time of the permanency-planning hearing. Based on its findings, the circuit court changed the goal of the case to termination of parental rights and adoption.

The Department filed a petition to terminate appellant's parental rights on November

SLIP OPINION

27, 2013. The hearing on the petition was held on February 20, 2014. Lauren Patton, the DHS caseworker assigned to the case, testified that appellant's income was from various forms of government assistance, which she stated was insufficient to care for appellant and the children. Appellant was not employed. Appellant had obtained a three-bedroom apartment in November through assistance from the Department of Housing and Urban Development (HUD). She had government-assisted housing previously when she lived in Star City, but lost it after being arrested. According to Ms. Patton, appellant still had not demonstrated that she could parent all four of her children. There was testimony that appellant's visits with the children were chaotic, with the children running around and stepping on and over appellant's youngest child, who was an infant. Appellant had canceled one visit because it was cold and had canceled another visit because a friend was having a baby. Ms. Patton also testified that appellant had Marquis Agee over to her apartment despite having an order of protection against him. She also testified regarding testimony at an earlier hearing that B.W.A.'s brain injury was "like he was dropped from the second story of a building." According to Ms. Patton, the children were very likely to be adopted.

Appellant testified that she had a job cleaning buildings that paid $500 per month, in cash. Appellant also had an application for disability pending. She had been attempting to obtain disability benefits since age sixteen. Appellant also testified that she believed she had stable housing because she had been in her current apartment for four months. Appellant stated that she still believed that the protective order against Marquis Agee was necessary because she does not feel safe around him due to the fact that he beat her when she was

SLIP OPINION

pregnant with B.W.A. She admitted that she became pregnant by Agee again after this happened.

On February 20, 2014, the circuit court entered an order granting the petition to terminate appellant's parental rights. This appeal followed.

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that the petitioner has proved at least one statutory ground for termination and that termination is in the child's best interest, considering the adoptability of the child and the potential harm to the child were he or she to be returned to the parent. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013). Only two of the grounds that were found by the circuit court were pled by DHS in the petition and, as such, will be the only grounds considered for the purposes of this appeal. Those grounds were: (1) that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)* and (2) the parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to have subjected any juvenile to aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*. The circuit court also found that the children were adoptable and that they would be subjected to potential harm if returned to appellant because she had not demonstrated the ability to parent the children and was not stable.

SLIP OPINION

This court has set out the standard of review in termination–of–parental–rights cases as follows:

> The rights of natural parents are not to be passed over lightly; however, parental rights will not be enforced to the detriment or destruction of the health and well being of the child. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A trial court's order terminating parental rights must be based on findings proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is defined as that degree of proof that will produce in the fact–finder a firm conviction as to the allegation sought to be established. *Dinkins*, *supra*. On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

*Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 791, at 8–9, 387 S.W.3d 311, 316.

With regard to the circuit court's finding that DHS proved that she had subjected any juvenile to aggravated circumstances, appellant argues that the circuit court did not indicate which evidence it relied upon and erroneously expanded its findings. "Aggravated circumstances" means a juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)* (Supp. 2013). In the termination order, the circuit court found that the "aggravated circumstances" ground had been proved because B.W.A. sustained a subdural hematoma, bruising, and bite marks while in appellant's custody. In the April 25, 2013 review order, the circuit court found that B.W.A. was subjected to "horrific" abuse while in appellant's custody that resulted in him

sustaining a subdural hematoma. That review order was made a part of the record at the termination hearing and there was testimony regarding B.W.A.'s brain injury at the hearing. Although the circuit court referenced bruising and bite marks in the termination order that were mentioned in the affidavit submitted in support of the petition for emergency custody but were not supported by any evidence at the termination hearing, evidence of the brain injury sustained by B.W.A. was part of the record. The circuit court's finding that the Department proved that appellant had subjected a juvenile to aggravated circumstances is not clearly erroneous.

Appellant argues that the circuit court erred by finding that the Department had proved the "subsequent factors" ground because she testified at the hearing that she had attempted to contact her caseworker weekly, that she had maintained appropriate housing for the prior four months, that she had applied for disability and had a job paying $500 per month, and that she could care for all of the children. We hold that the circuit court's finding that this ground was proved is not clearly erroneous. Appellant was ordered to maintain stable employment. She had been employed for only a short time while the children were in the Department's custody. She had applied for disability, but according to her own testimony, she had been attempting to obtain it for years without success. Appellant did have appropriate housing at the time of the hearing, but had only had the housing for a short time and had lost similar housing in the past due to criminal activity. She also continued to associate with a man who she claimed beat her while she was pregnant, and she became pregnant by him again.

Also, the children were taken into custody after B.W.A. sustained a significant injury that the circuit court attributed to abuse while he was in appellant's custody, and appellant had not shown an ability to care for all the children in order to keep them safe. Appellant responds to this by pointing out that she was determined to be a fit parent to her youngest child, who was born after her three older children had been removed. However, that child was never a part of this case, and her fitness to parent that child was not before the circuit court. What was before the circuit court was appellant's ability to care for the three children taken into DHS's care. The circuit court determined that she could not do so, and that determination was not in error based on the evidence presented.

We also hold that the circuit court's finding that termination was in the children's best interest is not clearly erroneous. There was testimony that the children were adoptable. There was evidence that appellant lacked sufficient income to meet the children's needs and that over a year of services had not rendered her capable of caring for the three children who had been taken into custody. Given that the children were taken into care as a result of a serious non-accidental injury to one of them, this evidence is sufficient to establish potential harm.

Finally, appellant argues that DHS failed to make reasonable efforts at reunification. This argument was never made to the circuit court. We have held that even in termination cases, we will not address issues raised for the first time on appeal. *McElroy v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 117, 432 S.W.3d 109. Therefore, this issue is not preserved for review on appeal.

Affirmed.

HARRISON and GLOVER, JJ., agree.

Cite as 2014 Ark. App. 469

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, Dependency–Neglect Appellate Division, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith Chrestman*, attorney ad litem for minor children.